## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| PUBLIC INVESTORS ARBITRATION BAR ASSOCIATION, | |
| Plaintiff, | Civil Action No. 11-2285 (BAH) |
| v. | Judge Beryl A. Howell |
| UNITED STATES SECURITIES AND EXCHANGE COMMISSION, | |
| Defendant. | |

## <u>MEMORANDUM OPINION</u>

The plaintiff, an association of attorneys who represent public investors in securities arbitrations, brings this action against the defendant U.S. Securities and Exchange Commission ("SEC") to compel its compliance with the Freedom of Information Act ("FOIA"), 5 U.S.C. § 552. Pursuant to the FOIA, the plaintiff requested various records related to the SEC's oversight of the Financial Industry Regulatory Authority ("FINRA"), but the SEC refused to disclose any responsive records, citing FOIA Exemption 8, 5 U.S.C. § 552(b)(8). Both parties have moved for summary judgment, and the primary question presented by these motions is whether FOIA Exemption 8 applies to documents related to the SEC's examinations of the administrative activities of a self-regulatory organization.

## I.    BACKGROUND

Before discussing the plaintiff's FOIA request, the Court will provide a brief introduction to FINRA, public investor arbitrations, and the SEC's oversight of FINRA. FINRA is a non-profit corporation that acts as a self-regulatory organization over all securities firms that do business with the public, also known as "broker-dealers." *See* Steven D. Urban, *Securities Arbitration of Investor Disputes: A Primer for the Unwary Practitioner*, 59 ADVOCATE 11, 11

(2012).  FINRA was created in 2007, "upon the consolidation of the enforcement arm of the New York Stock Exchange, and the National Association of Securities Dealers, Inc."  *Id.*  Beginning with the Supreme Court's holding in *Shearson/American Express, Inc. v. McMahon*, 482 U.S. 220, 238 (1987), "most disputes involving broker-dealers are now subject to arbitration rather than litigation."  6 THOMAS LEE HAZEN, THE LAW OF SECURITIES REGULATION § 15.0 (6th ed. 2009).[1]  One forum for the arbitration of securities claims by public investors is FINRA Dispute Resolution, Inc. ("FINRA DR"), which is "a subsidiary company under the umbrella of FINRA . . . charged with administrating arbitration, mediation, and other alternative dispute resolution services."  *See* Compl. ¶ 6, ECF No. 1.

Once parties commence an arbitration proceeding, "the proceedings in some ways resemble a typical court case":  the parties file pleadings, engage in discovery, and present their arguments to a panel of arbitrators, which in turn makes an award.  *See* 6 HAZEN, THE LAW OF SECURITIES REGULATION §§ 15.6–15.7.  "[N]either FINRA nor FINRA DR," however, "is a party [to the proceedings,] and the arbitrators are not FINRA or FINRA DR employees."  Decl. of William A. Jacobson ("Jacobson Decl.") ¶ 11, ECF No. 12-1.  "Rather, FINRA DR employees administrate the case pursuant to the terms of the [FINRA Code of Arbitration for Customer Cases], which contains various provisions as to arbitrator selection, disclosure, removal, and replacement."  *Id.*[2]  For example, FINRA uses what is called a "Neutral List Selection System," which randomly generates lists of arbitrators for a given hearing.  *See* FINRA Code of Arbitration Procedure for Customer Disputes ("FINRA Code") § 12400(a) (2008).  Once this list is generated, each party has the ability to strike up to four arbitrators from the list and must rank

---

[1] In *Shearson/American Express*, the Supreme Court held that pre-dispute agreements to arbitrate federal securities laws claims were enforceable.  *See Shearson/American Express*, 482 U.S. at 238.

[2] *See generally* FINRA Code of Arbitration Procedure for Customer Disputes (2008), *available at* http://www.finra.org/web/groups/arbitrationmediation/@arbmed/@arbion/documents/arbmed/p117546.pdf.

the remaining arbitrators by preference.  *See id.* § 12404.  Then, FINRA DR appoints the highest

ranked arbitrators from a combined list, *see id.* § 12406, and FINRA DR may remove and

replace any arbitrator "for conflict of interest or bias," either by request of a party or on its own,

*see id.* § 12407.

The SEC's Office of Compliance Inspectors and Examinations ("OCIE"), among other

responsibilities, "conducts oversight examinations of arbitration programs at self-regulatory

organizations that are registered with the SEC, including [FINRA]."  Decl. of Kristen Lever

("Lever Decl.") ¶ 2, ECF No. 10-1.  The OICE also handles "particular complaints . . . from

arbitration participants."  *Id.* ¶ 8.  "In response to each complaint, as part of OCIE's ongoing and

continuous oversight responsibilities, OCIE [investigates] the allegations," which can "include[]

obtaining a copy of the [arbitration] file and any other relevant documents from FINRA."  *Id.*

In a letter dated February 9, 2010, the plaintiff submitted a FOIA request to the SEC for

six categories of documents, all of which "relat[e] to audits, inspections, and reviews conducted

by the [SEC]" of FINRA.  *See* Compl. Ex. 1, at 1, ECF No. 1-1.  Specifically, the plaintiff's

FOIA request sought the following:

1. Documents relating to audits, inspections, and reviews conducted by the
   [SEC] in connection with the arbitrator selection process of [FINRA];

2. Documents relating to audits, inspections, and reviews conducted by the SEC
   in connection with FINRA's appointment of replacement arbitrators in the
   event that an arbitrator is stricken as part of the list selection process or
   removed for cause;

3. Documents relating to audits, inspections, and reviews conducted by the SEC
   in connection with FINRA's policies, procedures, and processes in deciding
   causal challenges to an arbitrator's appointment;

4. Documents relating to audits, inspections, and reviews conducted by the SEC
   in connection with FINRA's internal policies and procedures regarding
   arbitrator selection, appointment, and replacement;

5. Documents relating to audits, inspections, and reviews conducted by the SEC
   in connection with FINRA's pre-approval background check on arbitrator
   applicants; and

      6.   Documents relating to audits, inspections, and reviews conducted by the SEC
           in connection with FINRA's public arbitrator pilot program.

*Id.* at 1–2 (footnotes omitted).  Upon receipt of this request, the SEC "searched all places within

OCIE's records where it would be reasonable to find responsive documents."  Lever Decl. ¶ 3.

This search included "reviewing offsite storage boxes, locating boxes with labels indicating the

contents may be responsive in OCIE's onsite file room," and "contacting examiners still

employed by the SEC who participated in the examinations to identify boxes responsive to the

request and to identify unboxed documents that may be responsive, including any electronic

documents."  *Id.*  After conducting this search, the SEC located "approximately 65 boxes that

contain potentially responsive material."  *Id.* ¶ 5.  On March 24, 2010, however, the SEC notified

the plaintiff that it had "determined to withhold the non-public records that may be responsive to

your request under 5 U.S.C. § 552(b)(8)."  *See* Compl. Ex. 2, at 1, ECF No. 1-2.

        The plaintiff filed an administrative appeal of the SEC's determination on March 21,

2011—nearly one year after the SEC communicated its determination to the plaintiff.  *See*

Compl. Ex. 3, ECF No. 1-3.  After considering the plaintiff's administrative appeal, on April 25,

2011, the SEC decided to affirm its decision to withhold all potentially responsive records under

FOIA Exemption 8.  *See* Compl. Ex. 4, ECF No. 1-4.

        The plaintiff filed its Complaint in the instant action on December 22, 2011, seeking "a

declaratory judgment . . . that all of the documents in the custody and control of the SEC, which

are covered by [the plaintiff's] FOIA Request, must be disclosed to PIABA and that such

documents are not protected from disclosure by Exemption 8."  Compl. ¶ 16.  Pending before the

Court are the SEC's motion for summary judgment on the plaintiff's FOIA claim, as well as the

plaintiff's cross-motion for summary judgment.  For the reasons discussed below, the Court

grants the SEC's motion and denies the plaintiff's cross-motion.

## II.      LEGAL STANDARD

Congress enacted the FOIA to promote transparency across the government.  *See* 5 U.S.C. § 552; *Quick v. U.S. Dep't of Commerce, Nat'l Inst. of Standards & Tech.*, 775 F. Supp. 2d 174, 179 (D.D.C. 2011).  The Supreme Court has explained that the FOIA is "a means for citizens to know 'what their Government is up to.'  This phrase should not be dismissed as a convenient formalism.  It defines a structural necessity in a real democracy." *Nat'l Archives & Records Admin. v. Favish*, 541 U.S. 157, 171–72 (2004) (citation and internal quotation marks omitted).  "The basic purpose of FOIA is to ensure an informed citizenry, vital to the functioning of a democratic society, needed to check against corruption and to hold the governors accountable to the governed." *NLRB v. Robbins Tire & Rubber Co.*, 437 U.S. 214, 242 (1978). As a result, the FOIA requires federal agencies to release all records responsive to a request for production.  *See* 5 U.S.C. § 552(a)(3)(A).  Federal courts are authorized under the FOIA "to enjoin the agency from withholding agency records and to order the production of any agency records improperly withheld from the complainant." *Id.* § 552(a)(4)(B).

This strong interest in transparency must be tempered, however, by the "legitimate governmental and private interests [that] could be harmed by release of certain types of information." *United Techs. Corp. v. U.S. Dep't of Def.*, 601 F.3d 557, 559 (D.C. Cir. 2010) (internal quotation marks omitted); *see also Critical Mass Energy Project v. Nuclear Regulatory Comm'n*, 975 F.2d 871, 872 (D.C. Cir. 1992) (en banc).  Accordingly, Congress included nine exemptions permitting agencies to withhold information from FOIA disclosure.  *See* 5 U.S.C. § 552(b).  Generally, "[t]hese exemptions are explicitly made exclusive, and must be narrowly construed." *Milner v. Dep't of the Navy*, 131 S. Ct. 1259, 1262 (2011) (citations and internal quotation marks omitted); *see also Pub. Citizen, Inc. v. Office of Mgmt. & Budget*, 598 F.3d 865,

869 (D.C. Cir. 2010) ("FOIA allows agencies to withhold only those documents that fall under one of nine specific exemptions, which are construed narrowly in keeping with FOIA's presumption in favor of disclosure." (citations omitted)).  When a FOIA requester properly exhausts its administrative remedies, it may file a civil action challenging an agency's response to its request.  *See* 5 U.S.C. § 552(a)(4)(B); *Wilbur v. CIA*, 355 F.3d 675, 677 (D.C. Cir. 2004).  Once such an action is filed, the agency generally has the burden of demonstrating that its response to the plaintiff's FOIA request was appropriate.

When an agency's response to a FOIA request is to withhold responsive records, either in whole or in part, the agency "bears the burden of proving the applicability of claimed exemptions."  *Am. Civil Liberties Union v. U.S. Dep't of Def.* ("*ACLU/DOD*"), 628 F.3d 612, 619 (D.C. Cir. 2011).  "The government may satisfy its burden of establishing its right to withhold information from the public by submitting appropriate declarations and, where necessary, an index of the information withheld."  *Am. Immigration Lawyers Ass'n v. U.S. Dep't of Homeland Sec.*, 852 F. Supp. 2d 66, 72 (D.D.C. 2012) (citing *Vaughn v. Rosen*, 484 F.2d 820, 827–28 (D.C. Cir. 1973)).  "If an agency's affidavit describes the justifications for withholding the information with specific detail, demonstrates that the information withheld logically falls within the claimed exemption," and "is not contradicted by contrary evidence in the record or by evidence of the agency's bad faith, then summary judgment is warranted on the basis of the affidavit alone."  *ACLU/DOD*, 628 F.3d at 619.  "Ultimately, an agency's justification for invoking a FOIA exemption is sufficient if it appears 'logical or 'plausible.'"  *Id.* (internal quotation marks omitted) (quoting *Larson v. Dep't of State*, 565 F.3d 857, 862 (D.C. Cir. 2009)).

When a requester challenges an agency's response based on the adequacy of the search performed, "[t]o prevail on summary judgment . . . the defending 'agency must show beyond

material doubt . . . that it has conducted a search reasonably calculated to uncover all relevant documents.'" *Morley v. CIA*, 508 F.3d 1108, 1114 (D.C. Cir. 2007) (quoting *Weisberg v. U.S. Dep't of Justice* ("*Weisberg I*"), 705 F.2d 1344, 1351 (D.C. Cir. 1983)). "In order to obtain summary judgment the agency must show that it made a good faith effort to conduct a search for the requested records, using methods which can be reasonably expected to produce the information requested." *Oglesby v. U.S. Dep't of Army*, 920 F.2d 57, 68 (D.C. Cir. 1990). "Summary judgment may be based on affidavit, if the declaration sets forth sufficiently detailed information 'for a court to determine if the search was adequate.'" *Students Against Genocide v. Dep't of State*, 257 F.3d 828, 838 (D.C. Cir. 2001) (quoting *Nation Magazine v. U.S. Customs Serv.*, 71 F.3d 885, 890 (D.C. Cir. 1995)).

## III.   DISCUSSION

### A.   <u>The Scope of FOIA Exemption 8</u>

This case primarily presents a question of statutory interpretation. In particular, this case requires the Court to examine the scope of FOIA Exemption 8, which exempts from disclosure any matters "contained in or related to examination, operating, or condition reports prepared by, on behalf of, or for the use of an agency responsible for the regulation or supervision of financial institutions." 5 U.S.C. § 552(b)(8). The parties agree that FINRA is a "financial institution" within the meaning of Exemption 8, and they also agree that the SEC is "an agency responsible for the regulation or supervision of financial institutions," as that phrase is used in Exemption 8. *See* Def.'s Mem. of P. & A. for Summ. J. ("Def.'s Mem.") at 5, ECF No. 10; Pl's Opp'n to Def.'s Mot. for Summ. J. ("Pl.'s Opp'n") at 7, ECF No. 12. The parties disagree, however, whether the documents sought by the plaintiff are "related to examination, operating, or condition reports prepared by, on behalf of, or for the use of" the SEC. *See* 5 U.S.C. § 552(b)(8).

At the outset, the Court notes that the language of Exemption 8, by its terms, is very broad.  First, although Exemption 8 is limited to "examination, operating, or condition reports prepared by, on behalf of, or for the use of" a financial regulatory agency, the exemption covers all material that is "related to" such reports, not just reports themselves.  Hence, the "related to" language casts a wide net of non-disclosure over any documents that are logically connected to an "examination, operating, or condition report[]."  *See id.*  Furthermore, "Exemption 8 does not require the defendant to identify a specific report to which the information relates."  *Judicial Watch, Inc. v. U.S. Dep't of Treasury* ("*Judicial Watch/Treasury*"), 796 F. Supp. 2d 13, 37 (D.D.C. 2011) (citing *McKinley v. FDIC*, 744 F. Supp. 2d 128, 143–44 (D.D.C. 2010)).  Rather, Exemption 8 extends to any documents received by a financial regulatory agency in the course of exercising its "regulatory responsibilities in relation to the financial institutions whose information has been withheld."  *See McKinley*, 744 F. Supp. 2d at 144; *see also Judicial Watch/Treasury*, 796 F. Supp. 2d at 37 (upholding Treasury Department's withholding, under Exemption 8, of "information [the FDIC] relayed to the [Treasury] through its monitoring of the condition of the financial institutions it regulates").  Finally, the D.C. Circuit has held that, for purposes of Exemption 8, "examination reports need not pertain to an institution that is regulated or supervised by the withholding agency."  *Pub. Citizen v. Farm Credit Admin.*, 938 F.2d 290, 294 (D.C. Cir. 1991).  This means that agencies that do not directly regulate or supervise a particular financial institution may still withhold information about that institution under Exemption 8, so long as the withholding agency is one that is "responsible for the regulation or supervision of financial institutions" more generally.  *See* 5 U.S.C. § 552(b)(8).

In the instant action, the SEC rests its argument in favor of nondisclosure on the plain language of both Exemption 8 and the plaintiff's FOIA request, contending that "PIABA's

request by its very terms recognizes that responsive documents will have been obtained or generated in the course of SEC 'audits, inspections, and reviews,' which are all synonyms for 'examinations.'" Def.'s Mem. at 5–6.  Thus, according to the SEC, "[b]ecause the documents relate to examinations of a financial institution regulated by the SEC, that is the beginning and end of the inquiry." *Id.* at 6.  The plaintiff, however, advocates for a narrower construction of Exemption 8, based on what it perceives to be the thrust of the FOIA's legislative history and the weight of authority interpreting Exemption 8.  The plaintiff begins by clarifying that its FOIA request "seeks a narrow set of documents as to the way in which FINRA, through FINRA DR, administrates the arbitrator selection process in private arbitrations." Pl.'s Opp'n at 2.  Next, the plaintiff contends that "neither of the legislative purposes behind Exemption 8 is implicated" by this narrow set of documents, and "[e]very reported case of which we are aware in which Exemption 8 has been applied in some measure involved the finances of the subject financial institution or financial transactions involving the financial institution." *See id.* at 8.  According to the plaintiff, since "the audits, inspections, and reviews conducted by the SEC of FINRA's arbitrator selection process do not implicate any such financial conditions or transactions," it "would work an unreasonable result to apply an exemption based on protecting the financial security of the institution to documents having nothing to do with the institution's finances or financial activities." *Id.* at 9.

1.    ***The Text of, and Legislative Purpose for, Exemption 8 Permit Withholding.***

In approaching the question presented by this case, the Court is mindful that "a reviewing court must accord first priority in statutory interpretation to the plain meaning of the provision in question." *See Consumers Union of U.S., Inc. v. Heimann*, 589 F.2d 531, 533 (D.C. Cir. 1978). Heeding this canon of statutory construction, the D.C. Circuit has held that "the meaning of

exemption 8 [is] clear," and "its broad, all-inclusive scope should be applied as written since Congress ha[s] 'intentionally and unambiguously' so contemplated." *Gregory v. FDIC*, 631 F.2d 896, 898 (D.C. Cir. 1980) (per curiam) (quoting *Heimann*, 589 F.2d at 533). Indeed, the D.C. Circuit has held that, in Exemption 8, "Congress has intentionally and unambiguously crafted a particularly broad, all-inclusive definition," and thus "it is not [the Court's] function, even in the FOIA context, to subvert that effort." *Heimann*, 589 F.2d at 533; *see also McKinley*, 744 F. Supp. 2d at 143 ("Although generally FOIA exemptions are to be 'narrowly construed,' it is well-established that Exemption 8's scope is 'particularly broad.'" (citations omitted)); *Judicial Watch/Treasury*, 796 F. Supp. 2d at 37 ("While FOIA exemptions are normally construed narrowly, it is recognized in this Circuit that Exemption 8's scope is 'particularly broad.'" (quoting *Heimann*, 589 F.2d at 533)).

Despite the strong preference accorded to a statute's plain meaning, "a court can look beyond the plain meaning of a statute in limited instances, most notably when . . . a literal reading leads to an unreasonable result." *Heimann*, 589 F.2d at 534. The plaintiff "vigorously asserts" that this situation is present here, *see id.*, and therefore the Court will also consider the legislative history of this FOIA exemption. *See, e.g.*, Pl.'s Opp'n at 8 ("[I]t would lead to an 'unreasonable result' to apply Exemption 8 to documents which have nothing to do with the purposes behind the exemption."). To begin, the legislative history specifically addressing the purposes of Exemption 8 during the enactment of the FOIA "is rather sparse." *See Heimann*, 589 F.2d at 539 (Wright, J., concurring). The 1965 Senate report on the FOIA stated that "Exemption No. 8 is directed specifically to insuring the security of our financial institutions by making available only to the Government agencies responsible for the regulation or supervision of such institutions the examination, operating, or condition reports prepared by[,] on behalf of,

or for the use of such agencies."  S. Rep. No. 89-813, at 10 (1965).  Similarly, the 1966 House

report observed:  "[Exemption 8] is designed to insure the security and integrity of financial

institutions, for the sensitive details collected by Government agencies which regulate these

institutions could, if indiscriminately disclosed, cause great harm."  H.R. Rep. No. 89-1497, at 11

(1966).

From these reports and other pieces of the FOIA's legislative history, the D.C. Circuit has

distilled two legislative purposes behind Exemption 8.  "[T]he primary reason for adoption of

exemption 8 was to ensure the security of financial institutions."  *Heimann*, 589 F.2d at 534.

"Specifically, there was concern that disclosure of examination, operation, and condition reports

containing frank evaluations of the investigated banks might undermine public confidence and

cause unwarranted runs on banks."  *Id.*  "[A] secondary purpose in enacting exemption 8 appears

to have been to safeguard the relationship between the banks and their supervising agencies."  *Id.*

In this regard, "[i]f details of the bank examinations were made freely available to the public and

to banking competitors, there was concern that banks would cooperate less than fully with

federal authorities."  *Id.*; *see also Bloomberg, L.P. v. U.S. Sec. & Exch. Comm'n*, 357 F. Supp. 2d

156, 170 (D.D.C. 2004) ("[T]he purpose of [Exemption 8] is . . . to ensure that [financial]

institutions continue to cooperate with regulatory agencies without fear that their confidential

information will be disclosed.").[3]

The plaintiff agrees that these were the two discernible legislative purposes motivating

enactment of FOIA Exemption 8, but the plaintiff nevertheless contends that "neither of the

legislative purposes behind Exemption 8 is implicated" by the documents that it seeks.  *See* Pl.'s

---

[3] As to this second purpose, former Chief Judge Wright noted in his concurring opinion in *Heimann* that "[t]he House and Senate Reports make reference to the 'integrity' and 'security' of financial institutions," which are "words that could . . . refer only to commercial soundness and solvency."  *Heimann*, 589 F.2d at 539 (Wright, J., concurring).  On the other hand, Judge Wright observed, "those words might have somewhat broader import as well, perhaps encompassing the need for a smoothly functioning regulatory regime."  *Id.*

Opp'n at 8.[4]  In particular, the plaintiff argues that "in the context of FINRA DR's administration

of the arbitrator selection process in private arbitrations, there is no threat of [regulatory]

disruption" from the release of documents related to the examination of FINRA's administrative

functions.  *See* Pl.'s Opp'n at 9.  The plaintiff goes so far as to contend that "[t]o apply

Exemption 8 to the administrative functions of FINRA DR as to arbitrator selection would read

the purpose and wording of Exemption 8 out of existence," and "would create the unreasonable

result that the SEC would act as a functional vacuum cleaner into which all manner of non-

exempt documents would be shielded from scrutiny."  Pl.'s Reply Mem. in Further Supp. of Pl.'s

Cross-Mot. for Summ. J. ("Pl.'s Reply") at 6–7, ECF No. 19.

     The Court is sympathetic to the plaintiff's parade of horribles, but the broad language of

the FOIA, as well as Congress's recent amendment to the 1934 Securities Exchange Act, require

the Court to conclude that the documents sought by the plaintiff are exempt from disclosure.

The keystone of the plaintiff's argument is that Congress did not intend, through FOIA

Exemption 8, to protect from disclosure records related to a regulatory agency's examination of a

financial institution's administrative functions.  Indeed, only if this proposition were true would

the withholding of such documents be the "unreasonable result" of which the plaintiff repeatedly

cautions.  Yet, it is clear that at least one purpose of Exemption 8, apparent from both the plain

meaning of its text and the legislative history, is served by withholding the records at issue in this

case.  That purpose, as the D.C. Circuit has put it, is "to safeguard the relationship between the

banks and their supervising agencies."  *See Heimann*, 589 F.2d at 534.  Put another way, this

purpose is "to ensure that [financial] institutions continue to cooperate with regulatory agencies

without fear that their confidential information will be disclosed."  *Bloomberg*, 357 F. Supp. 2d

at 170.  As the SEC states in its sworn declaration, "OCIE depends on receiving cooperation to

---

[4] The SEC does not argue that the first purpose—preserving the security of financial institutions—is implicated here.

effectively and efficiently conduct the types of examinations that are at issue here," and "in the course of an examination, the [OCIE] staff necessarily must provide frank evaluations of the quality of, and need for, improvement in, FINRA's regulatory programs."  Lever Decl. ¶¶ 15–16.  Hence, according to the SEC, "[t]he ability to share and discuss those evaluations with FINRA without making them public is crucial to the success of the SEC's examination program."  *Id.*  ¶ 16.  The plaintiff offers no meaningful opposition to these statements other than the conclusory assertion that release of the examination documents carries "no threat of disruption."  *See* Pl.'s Opp'n at 9.

At a higher level of generality, the plaintiff's policy argument does not fit with either the plain language of the FOIA's text or the statute's legislative history, as that history has been interpreted in this Circuit.  The plaintiff's proposed interpretation of Exemption 8 would only protect documents that in some way "implicate[] a financial transaction or condition of the financial institution."  *See* Pl.'s Opp'n at 9.  This might make sense, from a policy perspective, to prevent self-regulatory organizations or other industry-policing organizations from becoming "captive" to the financial institutions they regulate, rather than serving the consumer protection and market integrity functions that they were intended to perform.  The text of the statute, however, indicates no such limitation.  The statute broadly exempts any records "related to examination, operating, or condition reports prepare by, on behalf of, or for the use of" a financial regulatory agency.  5 U.S.C. § 552(b)(8).  This sweeping language "seems an odd way of phrasing the kind of [limited] provision which [the plaintiff] claims was intended."  *Heimann*, 589 F.2d at 540 (Wright, J., concurring).  Congress did not limit the exemption according to the function of the financial institution being examined.  Rather, "Congress looked to the nature and source of the material and determined to provide *absolute* protection *regardless* of the

circumstances underlying the regulatory agency's receipt or preparation of examination, operating or condition reports." *Gregory*, 631 F.2d at 898 (emphasis added). Indeed, "there is nothing in the legislative history to indicate that Congress . . . intended exemption 8 to apply only to the varieties of bank examinations then extant, for . . . the disclosure of the bank examination reports *of any type* . . . could lead to the same adverse results." *Heimann*, 589 F.2d at 534 (emphasis added).

Furthermore, the plaintiff's proposed limitation on the text of Exemption 8 does not appear to fit with the larger structure of the FOIA. Although the plaintiff would narrow Exemption 8 only to cover records related to "a financial transaction or condition of the financial institution," *see* Pl.'s Opp'n at 9, the FOIA already provides a separate exemption for "commercial or financial information obtained from a person and privileged or confidential." *See* 5 U.S.C. § 552(b)(4). The plaintiff's reading of Exemption 8 would essentially render Exemption 4 superfluous, or at least would sap Exemption 4 of any meaning that is reasonably distinct from that of Exemption 8. Hence, the plaintiff's proposed interpretation of Exemption 8 does not comport with the Court's obligation to "strive to interpret a statute to give meaning to every clause and word, and certainly not to treat an entire subsection as mere surplusage." *See Donnelly v. FAA*, 411 F.3d 267, 271 (D.C. Cir. 2005).

Finally, although the plaintiff finds significance in the notion that "[e]very reported case of which [the plaintiff] is aware in which Exemption 8 has been applied in some measure involved the finances of the subject financial institution or financial transactions involving the financial institution," *see* Pl.'s Opp'n at 8, that assertion is both factually inaccurate and legally irrelevant. First, it is clear that at least one case from within this Circuit (and arguably more) has applied Exemption 8 to documents other than those involving the finances or financial

transactions of the institutions being examined.  That case, *Bloomberg, L.P. v. SEC*, upheld the application of Exemption 8 to "notes and memoranda" of two aides to then SEC Chairman Harvey Pitt relating to the Chairman's meeting with officials from the New York Stock Exchange, the National Association of Securities Dealers, and several brokerage firms in which the officials "report[ed] to the SEC on steps they were taking or considering in connection with issues of concern regarding the regulation of securities analysts."  *See* 357 F. Supp. 2d at 167, 169.  Although the plaintiff baldly contends that "it is clear that the subject document [in *Bloomberg*] did concern the finances and financial transactions of the various brokerage firms involved," *see* Pl.'s Reply at 4–5, that fact is far from clear.  In fact, the *Bloomberg* court noted that the documents reflected "a candid assessment of industry problems" by financial institutions, *see Bloomberg*, 357 F. Supp. 2d at 170, which appears similar to the "frank evaluations of the quality of, and need for improvement in, FINRA's regulatory programs" contained in the documents at issue in the instant action, *see* Lever Decl. ¶ 16.

Indeed, the plaintiff's attempt to distinguish *Bloomberg* from the instant case is unpersuasive.  The plaintiff contends that the documents in *Bloomberg* "concern[ed] the finances and financial transactions of the various brokerage firms involved" because the documents related to "the interaction between the investment banking and broker-dealer functions."  Pl.'s Reply at 4–5.  Yet, the clear thrust of the meeting at issue in *Bloomberg* was not to report *directly* on the transactions or financial conditions of the brokerage firms, but rather to report on institutional problems related to fairness and transparency, such as conflicts of interest, that likely bear *indirectly* on financial matters and might require further regulation.  *See Bloomberg*, 357 F. Supp. 2d at 167–68 (observing that issues discussed at meeting included "the supervision of analysts, potential conflicts of interest for analysts and their firms, the structure of analyst

compensation, and the transparency of analysts' reports").  The plaintiff does not convincingly

distinguish the institutional or industry-wide regulatory problems at issue in *Bloomberg* with the

similar potential institutional problems at issue in the instant action.  Most notably, the plaintiff

does not explain why records regarding the examination of FINRA's arbitration selection

process—which appear to address similar institutional concerns about fairness and transparency

and that also likely have an indirect effect on the financial condition or transactions of the

financial institutions appearing in arbitrations before FINRA—should be treated differently from

the documents at issue in *Bloomberg*.  *See* Pl.'s Opp'n at 10 n.10 (stating that plaintiff's purpose

in obtaining the requested records is to "add more transparency and fairness to the arbitration

process and increase public confidence in the process").

More generally, however, even if the plaintiff were correct that every reported case

applying Exemption 8 only involved documents about financial institutions' transactions and

fiscal health, that pattern "would not provide a basis for imposing a limitation that does not exist

in the statutory language."  *See* Reply in Supp. of Mot. for Summ. J. ("Def.'s Reply") at 4, ECF

No. 17.  All that this fact would establish (if it were true) is that courts have consistently upheld

the application of Exemption 8 in the context of records related to financial institutions'

transactions and financial health.  It would most certainly *not* establish that such fact patterns are

the only scenarios in which application of Exemption 8 is appropriate.  Indeed, court decisions

cannot be read like statutes, applying the maxim *expressio unius est exclusio alterius* to exclude

any applications of a legal rule not previously considered.

### 2.     *2010 Amendment Defining "Financial Institution"*

Before concluding its discussion of Exemption 8's scope, the Court feels compelled to

point out a peculiar aspect of Exemption 8's reach that has not been addressed by the parties but

nevertheless illuminates why one origin of the instant controversy is the FOIA's definition of

"financial institution," not the definition of "examination, operating, or condition reports." *See* 5 U.S.C. § 552(b)(8).  As referenced above, the plaintiff concedes that FINRA is a "financial institution" as that term is used in Exemption 8.  *See* Pl.'s Opp'n at 7.  This concession is mandated by a recent legislative amendment, not to the FOIA, but to the Securities Exchange Act of 1934, which states that "[f]or purposes of [FOIA Exemption 8], . . . any entity for which the [SEC] is responsible for regulating, supervising, or examining under this title is a financial institution."  *See* 15 U.S.C. § 78x(e).  This amendment, passed by Congress in 2010, was intended "to improve transparency at the Securities and Exchange Commission," *see* 156 Cong. Rec. H6954 (daily ed. Sept. 23, 2010) (statement of Rep. EdolphusTowns), but it appears to have done just the opposite.

By way of background, Congress enacted a confidentiality provision in the Dodd-Frank Wall Street Reform and Consumer Protection Act ("Dodd-Frank"), Pub. L. No. 111-203, 124 Stat. 1376–2223 (2010), which amended the Securities Exchange Act to state that:

> the [SEC] shall not be compelled to disclose records or information obtained pursuant to [15 U.S.C. § 78q(b)], or records or information based upon or derived from such records or information, if such records or information have been obtained by the [SEC] for use in furtherance of the purposes of this title, including surveillance, risk assessments, or other regulatory and oversight activities.

*See* Dodd-Frank § 929I, 124 Stat. at 1858 (repealed 2010).  This provision was inserted into the Dodd-Frank bill at the request of the SEC, but it immediately came under scrutiny when the SEC invoked it in a civil lawsuit with Fox Business Network to withhold documents regarding the agency's handling of the Bernie Madoff case.  *See* 156 Cong. Rec. H6953 (daily ed. Sept. 23, 2010) (statement of Rep. Barney Frank).  The response from Congress was swift.  On September 16, 2010—less than two months after the SEC purportedly invoked section 929I in the Fox News litigation—a hearing was held before the House Financial Services Committee about how to fix what was perceived as an overbroad exemption for the SEC.  *See, e.g.*, *Legislative Proposals to*

*Address Concerns over the SEC's New Confidentiality Provision*, *Hearing Before the H. Comm. on Fin. Servs.* ("SEC Confidentiality Hearing"), 111th Cong. 6 (2010) (testimony of Rep. Towns) (testifying that section 929I was "too broad" because "[i]t allows the SEC to keep secret virtually any information it obtains under its examination authority."). At that time, five bills had already been drafted to repeal section 929I—four in the House and one in the Senate. *See* H.R. 5924 (2010); H.R. 5948 (2010); H.R. 5970 (2010); H.R. 6086 (2010); S. 3717 (2010). Two of the bills would have simply repealed section 929I, *see* H.R. 5924; H.R. 5948, while others would have, in addition to repealing section 929I, specified that "any entity for which the Commission is responsible for regulating, supervising, or examining under this title is a financial institution" for purposes of FOIA Exemption 8, *see* H.R. 6086; S. 3717.

In her testimony before the House Financial Services Committee, then SEC Chairman Mary Schapiro defended section 929I by testifying that it "was designed to improve [the SEC's] examinations of regulated entities by clarifying the protections afforded to regulatees that provide the Commission with sensitive and confidential materials as part of those examinations." *See* SEC Confidentiality Hearing at 10. Chairman Schapiro also specifically discussed the need for section 929I in light of the possibility that FOIA Exemption 8 "might not clearly cover [certain] materials and protect them from disclosure" because "courts have not yet addressed whether certain entities the Commission has the authority and the responsibility to examine . . . are financial institutions for purposes of these FOIA protections." *See id.* at 10, 12. Similarly, Susan Merrill, a former Chief of Enforcement at FINRA, testified that "[t]he FOIA exemptions are simply too imprecise to allay the industry's fears regarding public disclosure." *See id.* at 32. It is clear from the testimony before the House Financial Services Committee that the primary goal of section 929I was to fill a perceived gap in the law and prevent private litigants from

obtaining "proprietary information" from regulated financial entities through FOIA requests or third-party subpoenas to the SEC. *See, e.g.*, *id.* at 8 (testimony of Rep. Darrell Issa) ("[T]here is a legitimate reason to say that no one should ever be able to use the [SEC] to backdoor their way into information that would not otherwise be available through FOIA."); *id.* at 11 (testimony of Chairman Schapiro) ("[N]one of these proposals address instances in which third parties seek to compel the Commission to produce documents in non-FOIA litigation through third-party subpoenas."); *id.* at 33 (testimony of Susan Merrill) ("The fact that the FOIA exemptions do not apply to third-party subpoenas served upon the SEC is, in the industry's view, the most important consideration in weighing the interests served by Section 929I.").

Ultimately, Congress passed the Senate's proposed bill repealing section 929I. *See* Pub. L. No. 111-257, 124 Stat. 2646 (2010) (codified at 15 U.S.C. § 78x(e)). That law, as discussed above, not only repealed section 929I of Dodd-Frank but also amended the Securities Exchange Act to "clarify that any entity the SEC regulates under the Securities Exchange Act will be considered a financial institution for the purpose of FOIA Exemption 8." *See* SEC Confidentiality Hearing at 6 (testimony of Rep. Towns). The purpose for the repeal of section 929I was clear. As the Senate sponsor stated when he introduced the legislation on the floor of the Senate, section 929I "would shield from public scrutiny all information provided to the [SEC] in connection with its broad examination and surveillance activities," and therefore interests of government transparency necessitated its repeal. *See* 156 Cong. Rec. S7299 (daily ed. Sept. 21, 2010). In fact, Congressman Barney Frank was pellucid in his comments on the House floor that "we don't want the SEC at any point to be able to shelter information about what it's doing" because the SEC "must be fully transparent in its operations" and "accountable

to the American people, and also to scrutiny of the media and the press." *See* 156 Cong. Rec. H6953–54 (daily ed. Sept. 23, 2010).

Yet, by adding this definition of "financial institution" that would apply in FOIA Exemption 8, Congress appears to have given back with the FOIA what it simultaneously intended to take away by repealing section 929I.  Although perhaps motivated as a response to the concerns raised by Chairman Schapiro and others regarding the ambiguity of Exemption 8, the new definition of "financial institution" effectively expanded that term to include entities like FINRA that do not "manage[] money, credit, or capital," *see* BLACK'S LAW DICTIONARY 706 (9th ed. 2009), and appears to have inadvertently resulted in the very type of broad disclosure shield that the repeal of section 929I was intended to prevent.  Indeed, Congress's 2010 amendment to the Securities Exchange Act provides an even *broader* disclosure shield than section 929I did because Exemption 8 can be invoked by any "agency responsible for the regulation or supervision of financial institutions," *see* 5 U.S.C. § 552(b)(8), not just the SEC.[5] The Court is skeptical that a self-regulatory organization like FINRA would logically qualify as a "financial institution" as that term has traditionally been defined or as that term was understood when the FOIA was first enacted.  *See, e.g.*, BLACK'S LAW DICTIONARY at 706; WEBSTER'S THIRD NEW INTERNATIONAL DICTIONARY, UNABRIDGED 851 (1981) (defining "financial institution" as "an enterprise specializing in the handling and investment of funds"); *see also* 18 U.S.C. § 20 (defining "financial institution" for purposes of the criminal code); 31 U.S.C. § 5312(a)(2) (defining "financial institution" for purposes of the Bank Secrecy Act).  For this reason, the plaintiff may be correct that Exemption 8 is overbroad because it extends to records related to the oversight of self-regulatory organizations, but there is no escaping the conclusion

---

[5] The amended scope of Exemption 8 is also obviously narrower than section 929I of Dodd-Frank insofar as section 929I would have applied in non-FOIA contexts as well, such as third-party subpoenas.

that "Congress has left no room for a narrower interpretation," and therefore the plaintiff's arguments must be directed at Congress, rather than the courts.  *See Heimann* 589 F.2d at 535; *see also id.* at 541 (Wright, J., concurring) ("[I]f Congress wanted a bright line, I am not persuaded that we are the ones who should smudge it."); *Gregory*, 631 F.2d at 899 ("When experience shows that a[] [FOIA] exemption was too broadly drawn, Congress is, of course, free to reconsider.").  There is little question in the Court's mind that Congress's amendment effectively expanding the definition of "financial institution" was a well-intentioned legislative fix which, as this case demonstrates, has resulted in its own set of unintended consequences.

* * *

For the reasons discussed above, the Court holds that FOIA Exemption 8 broadly applies to records related to a regulatory agency's examination of a financial institution, including that financial institution's administrative functions or activities.  This may mean, as the plaintiff cautions, that "Exemption 8 applies to everything the SEC scoops up in the course of its interaction with FINRA," Pl.'s Reply at 3, but if that is the result, it is the only result that comports with the current text of the FOIA and the clear intent of Congress to add an expansive definition of "financial institution."

### B.       Sufficiency of the SEC's Search Efforts and Identification of Documents

In light of the Court's holding regarding Exemption 8, the rest of the issues presented in this case fall into line.  Nevertheless, the plaintiff raises two other potential problems with the SEC's response to the plaintiff's FOIA request that the Court must briefly address.  First, the plaintiff argues that the SEC has failed to "substantiate its motion for summary judgment with information sufficient to identify the documents at issue with sufficient clarity so as to demonstrate the application of the claimed exemption."  *See* Pl.'s Opp'n at 11.  The plaintiff also

21

appears to challenge whether the SEC conducted a reasonable search for responsive records. *See id.* at 5–6, 11–12.

### 1.   *Identification of Documents*

"'Even if the protected records could be withheld under one of the FOIA exemptions, that does not absolve the agency of its duty to identify the responsive documents, claim the relevant exemptions . . ., and explain its reasoning for withholding the documents in its affidavit.'" *Elliott v. U.S. Dep't of Agric.*, 596 F.3d 842, 851 (D.C. Cir. 2010) (quoting *Morley*, 508 F.3d at 1120). The agency's identification of withheld records is traditionally done through a *Vaughn* index, which permits an agency "to justify its actions without compromising its original withholdings." *See Judicial Watch, Inc. v. FDA* ("*Judicial Watch/FDA*"), 449 F.3d 141, 146 (D.C. Cir. 2006); *see also Campaign for Responsible Transplantation v. FDA*, 511 F.3d 187, 190 (D.C. Cir. 2007) ("The [*Vaughn*] index is supposed to 'describe with reasonable specificity the material withheld' and justify why each responsive document is exempt from disclosure under FOIA." (quoting *King v. Dep't of Justice*, 830 F.2d 210, 221 (D.C. Cir. 1987))); *Vaughn*, 484 F.2d at 826 (requiring agencies to submit "a relatively detailed analysis" of their basis for withholding information). Notwithstanding the traditional requirement of a *Vaughn* index, when "a claimed FOIA exemption consists of a generic exclusion, dependent upon a category of records rather than the subject matter which each individual record contains, resort to a *Vaughn* index is futile." *Church of Scientology of Cal. v. IRS*, 792 F.2d 146, 152 (D.C. Cir. 1986). Indeed, an agency may "submit other measures in combination with *or in lieu of* the index itself." *Judicial Watch/FDA*, 449 F.3d at 146 (emphasis added). Ultimately, an agency's submissions suffice "'so long as they give the reviewing court a reasonable basis to evaluate the claim of privilege.'" *Id.* (quoting *Gallant v. NLRB*, 26 F.3d 168, 172–73 (D.C. Cir. 1994)).

In the instant action, the SEC did not submit a *Vaughn* index.  In lieu of a *Vaughn* index,

the SEC submitted a sworn declaration that summarizes the agency's search efforts and explains

both the nature of the withheld documents and the factual basis for withholding those documents

categorically under Exemption 8.  *See* Lever Decl.  The plaintiff complains that this declaration

is insufficient, *see* Pl.'s Opp'n at 12–14, but the Court disagrees.  In fact, this case is a

paradigmatic example of a situation in which a document-by-document *Vaughn* index is

unnecessary because the scope of the plaintiff's FOIA request necessarily renders all potentially

responsive materials exempt from disclosure under Exemption 8.  As previously discussed, each

of the six categories of records sought by the plaintiff "relat[e] to audits, inspections, and reviews

conducted by the [SEC]" of FINRA.  *See* Compl. Ex. 1, at 1.  Therefore, in light of the Court's

holding above that records related to SEC examination reports of FINRA are exempt under

Exemption 8, it necessarily follows that *any* records responsive to the plaintiff's FOIA request

would be exempt from FOIA disclosure.  In other words, for purposes of analyzing the SEC's

withholding decision, the plaintiff requested only one overarching category of documents:  those

"relating to audits, inspections, and reviews conducted by the [SEC]" of FINRA, *see id.*, and that

entire category of records is, by its terms, exempt from disclosure.  Hence, the SEC's claimed

exemption is "dependent upon the category of records rather than the subject matter which each

individual record contains," and therefore "resort to a *Vaughn* index is futile."  *Church of*

*Scientology*, 792 F.2d at 152.[6]

The plaintiff also attempts to point out other deficiencies in the SEC's sworn declaration,

but none of them holds water.  First, the plaintiff complains that the SEC's declaration "does not

---

[6] To put this issue in stark relief, the factual scenario in this case is akin to a FOIA request that would seek "all materials in the possession of the agency that are classified in the interest of national security."  Of course, any records potentially responsive to such a request would be categorically exempt from disclosure under FOIA Exemption 1, just as here any records potentially responsive to the plaintiff's request are categorically exempt from disclosure under Exemption 8.

in any way demonstrate that the documents withheld concern FINRA's financial condition or FINRA's financial transactions, or that the disclosure would damage the SEC's regulatory oversight." Pl.'s Opp'n at 12. Yet, as the Court's holding above makes clear, the SEC is not required to demonstrate any of these things to withhold documents under Exemption 8. *See supra* Part III.A.

The plaintiff further complains that the SEC's declaration "leaves unclear whether some of the documents withheld . . . are even part of or related to a report covered by Exemption 8" and that the SEC's affiant "does not affirm that all of the documents in the 65 boxes are contained in or relate to a report." Pl.'s Opp'n at 13. Once again, this contention is both factually inaccurate and legally irrelevant. It is factually inaccurate because the SEC's declaration avers that all of the potentially responsive records "relate to four examinations conducted by OCIE," and that "[e]ach examination described . . . resulted in a writing, either termed a report or closing memorandum." *See* Lever Decl. ¶¶ 7, 9. Thus, each potentially responsive document does appear to relate to an examination report of some kind. In any event, the plaintiff's assertion is legally irrelevant because, as discussed above, "Exemption 8 does not require the defendant to identify a specific report to which the information relates," *see Judicial Watch/Treasury*, 796 F. Supp. 2d at 37 (citing *McKinley*, 744 F. Supp. 2d at 143–44), and the SEC avers that all of the potentially responsive documents were obtained pursuant to the SEC's "ongoing and continuous oversight responsibilities," *see* Lever Decl. ¶¶ 8, 10, which is sufficient to bring them within the ambit of Exemption 8.

Finally, the plaintiff complains that some of the records in the 65 boxes located by the SEC may not be responsive to its FOIA request. *See* Pl.'s Opp'n at 12 (complaining that some documents "might be beyond the scope of the FOIA Request"); Pl.'s Reply at 3 n.2 (arguing that,

because "we are left to guess whether the documents the SEC says might be in the boxes even are responsive to the FOIA Request," this constitutes a "failure of proof" that is "fatal to the SEC's motion"). Yet, it is elementary that an agency's decision to withhold *non-responsive* material is not a violation of the FOIA. *See, e.g.*, 5 U.S.C. § 552(a)(3).

### 2. *Adequacy of Search*

The plaintiff does not clearly state whether it challenges the adequacy of the SEC's search, but it does contend in its statement of material facts in dispute that "[t]he SEC has not set forth a sufficient basis to prove that there are 'approximately 65 boxes in which potentially responsive documents could be located,' as there has not been an actual search of boxes," and "[t]he SEC has not set forth a sufficient basis to prove that the universe of documents is only the four 'examinations' by the SEC's [OCIE]." *See* Pl.'s Opp'n at 5–6. These statements, though not elaborated through any legal argument, fairly raise the issue of whether the SEC conducted an adequate search for responsive records. Though the issue was (barely) raised, the Court is skeptical that the adequacy of the SEC's search makes any difference in light of the fact that any records potentially responsive to the plaintiff's request would be categorically exempt from disclosure in any event. *See supra* Part III.B.1. Assuming *arguendo* that the adequacy of the SEC's search is still a relevant issue, however, the Court finds that the SEC has nevertheless averred that it "conducted a search reasonably calculated to uncover all relevant documents.'" *Morley*, 508 F.3d at 1114. The SEC's sworn declaration states that it "searched all places within OCIE's records where it would be reasonable to find responsive documents." Lever Decl. ¶ 3. This was accomplished by "reviewing offsite storage records, locating boxes with labels indicating the contents may be responsive in OCIE's onsite file room," and "contacting examiners still employed by the SEC who participated in the examinations to identify boxes responsive to the request and to identify unboxed documents that may be responsive, including

any electronic documents." *See id.*  The plaintiff points to no aspect of this search that was inadequate, and the Court concludes that, absent some identifiable deficiency in the SEC's process, the agency's search efforts were sufficient to comply with its FOIA obligations.

Therefore, the Court concludes that none of the additional arguments raised by the plaintiff is sufficient to defeat summary judgment in favor of the SEC.

## IV.    CONCLUSION

As the foregoing discussion establishes, the Court concludes that the SEC is entitled to summary judgment on the plaintiff's FOIA claim, primarily because all records relating to the SEC's examination reports—including reports relating to the administrative functions of FINRA—are exempt from disclosure under the FOIA.  Additionally, the Court concludes that the SEC sufficiently identified the withheld documents in order to justify its withholdings, despite the absence of a document-by-document *Vaughn* index, and the Court also concludes that the SEC's search efforts were adequate.  Therefore, the SEC is entitled to summary judgment. For the same reasons, the Court concludes that the plaintiff's cross-motion for summary judgment must be denied.

An appropriate Order accompanies this Memorandum Opinion.

Date: March 14, 2013

/s/ *Beryl A. Howell*

BERYL A. HOWELL
United States District Judge